UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-10-20-B-W |
| | ) | |
| NATHAN DODD | ) | |

**ORDER ON GOVERNMENT'S MOTION FOR DETENTION**

Concluding that the Government failed to sustain its burden to demonstrate by clear and convincing evidence that no condition or combination of conditions will reasonably assure the Defendant's appearance, this Court denies the Government's motion for Nathan Dodd's pretrial detention, and releases him with conditions.

I. BACKGROUND

On February 10, 2010, a federal grand jury returned a one count indictment against Nathan Dodd alleging violation of 18 U.S.C. § 841(a)(1) which prohibits the distribution of a controlled substance. *Indictment* (Docket # 2). An arrest warrant was issued the following day. Mr. Dodd successfully evaded police, hiding out in Waldo County. He eventually made his way south to Portland.[1] At some point, Mr. Dodd decided to return to the Belfast area and on March 5, 2010, Waldo County Police arrested Mr. Dodd.[2] On March 8, 2010, Mr. Dodd made his initial appearance, at which time he entered a not guilty plea. The Government moved for pretrial detention of Mr. Dodd because the potential term of imprisonment for the drug offense is at least ten years and Mr. Dodd posed a serious flight risk. *Mot. for Detention* (Docket # 8) (*Gov't's*

---

[1] Though Mr. Dodd never made it out of Maine, the Government convincingly argues that Mr. Dodd had purchased a bus ticket and was attempting to flee the state.
[2] The Government argued that Mr. Dodd returned to Belfast to say good-bye to his son. Police were notified of Mr. Dodd's intent to return, at which point they were able to locate Mr. Dodd and place him under arrest.

*Mot.*).  Mr. Dodd was temporarily detained and on March 10, 2010, the Court held a detention hearing pursuant to 18 U.S.C. § 3142(f).

### A. Legal Standard

The Bail Reform Act, 18 U.S.C. § 3142, governs the procedural and substantive rules for pretrial detention of defendants. Where there is probable cause to believe that a defendant committed certain crimes pursuant to 18 U.S.C. § 3142(e), including those drug offenses for which the penalty includes a maximum term of imprisonment of ten years or more, a rebuttable presumption arises that "no conditions or combination of conditions [of release] will reasonably assure the appearance of the person as required."[3]  18 U.S.C. § 3142(e); *see United States v. Torres-Rosario*, 600 F. Supp. 2d 327, 330-331 (D.P.R. 2009).

The presumption remains in effect even when a defendant brings forward rebuttal evidence. *Torres-Rosario*, 600 F. Supp. 2d at 330. The evidence brought by the defendant merely serves as evidentiary weight to be considered by the court when determining the defendant's bail status; the government retains the burden throughout the inquiry to prove that no release conditions can reasonably assure the defendant's appearance. *Id*; *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (*per curiam*). When determining whether someone poses a risk of flight, the preponderance of the evidence standard applies. *Torres-Rosario*, 600 F. Supp. 2d at 330 n.4 (stating that "[the Court] appl[ies] a *preponderance of the evidence* standard to the proof pertaining to flight risk, but *clear and convincing evidence* must be introduced to support that conclusion that a defendant's detainment prior to trial is necessary to ensure the safety of the community. *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir.

---

[3] The statute also provides that detention may be ordered if no condition or combination of conditions will reasonably assure "the safety of any other person and the community"; however, the Government conceded at the hearing that Mr. Dodd did not pose a risk to the safety of another person or the community.  18 U.S.C. § 3142(e).

2

1991)"). At the hearing, the Government pressed only flight risk as a reason for detention, not the safety of any other person or the community.

  **B.**  **Statutory Criteria**

At the detention hearing, the Court applied the criteria in 18 U.S.C. § 3142(g):

  **1.**  **The nature and circumstances of the offense, including whether the offense involved a controlled substance - 18 U.S.C. § 3142(g)(1)**

The indictment returned charges that "[o]n about July 15, 2009, in the District of Maine [Mr. Dodd] did knowingly and intentionally distribute a mixture or substance containing cocaine, a Schedule II controlled substance." *Indictment*. As directed by Congress, this is a factor against release. The circumstances of the offense are also troubling, in that the Government has alleged that Mr. Dodd engaged in the July 15, 2009 drug deal while his son waited in his car, and Mr. Dodd has not been entirely truthful with law enforcement, providing them with a false name and address prior to his arrest. This factor weighs against pretrial release.

  **2.**  **The weight of the evidence against the Defendant - 18 U.S.C. § 1342(g)(2)**

At the hearing the Government proffered evidence that the July 15, 2009 drug deal was arranged with the help of a cooperating defendant and that the transaction was recorded on video. The weight of the evidence against Mr. Dodd is a factor against release.

  **3.**  **The history and characteristics of the Defendant - 18 U.S.C. § 3142(g)(3)(A)**

The statute directs the Court to consider a number of factors relating to the Defendant's history and characteristics, including his criminal history, his family and community ties, and his past conduct. Mr. Dodd's criminal history is minor. He has resided in the Belfast area his entire life. His mother lives in Belfast, and his step-mother in Lincolnville. He has two brothers who also live in the area. He is not married and has a young son who lives in the area. His family

and community ties are strong, perhaps too strong, as Mr. Dodd was able to hide out in Waldo County for about a month without being detected by law enforcement officers who were actively looking for him. Mr. Dodd's past conduct including his ability to elude law enforcement and his lack of candor upon his arrest gives this Court pause. Mr. Dodd's deceptive and misleading behavior weighs against his release.

### 4. Whether, at the time of the current offense or arrest, the Defendant was on probation, parole, or other release pending trial - 18 U.S.C. § 3142(g)(3)(B)

This factor does not weight against release, as Mr. Dodd was not on probation, parole, or other release pending trial at the time of the offense or arrest.

### 5. Financial Condition Resulting in Pretrial Detention - Section 3142(c)(2)

The Court considered Mr. Dodd's and his family's financial condition as an additional factor in Mr. Dodd's case. Under § 3142(c)(2), the Court is not allowed "to impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). The detention hearing was initially held on March 10, 2010 and at the close of the hearing, the Court granted additional time for the parties to determine whether there were conditions that would reduce the risk of flight, especially in view of Mr. Dodd's prior actions. The parties explored the possibility of a bond executed by a close family member to assure Mr. Dodd's appearance as necessary, and the Government confirmed that it would not oppose release with significant conditions, if appropriate financial security were available to assure Mr. Dodd's appearance.

As it turns out, however, none of the Dodd family is in a financial position to sign a bond or other security to satisfy this suggested condition; no one owns a home or has otherwise sufficient equity to satisfy even a modest securitized pledge. As the issues at the hearing narrowed, it began to appear that if Mr. Dodd's family were one of means, he would be released,

4

but since it is not, he would not. In this context, the Court became concerned that if not released, the critical factor for his continued incarceration would be his and his family's lack of wealth or property, a circumstance the Court considered to be potentially contrary to § 3142(c)(2) and basic concepts of equal justice. Although not determinative, where a critical factor preventing his release was his or his family's financial capacity, the Court considered this factor as weighing for pretrial release with significant conditions.

### C.    Conditions Imposed

The Court turns to the evidence presented by Mr. Dodd to assure his appearance.

#### 1.    Third Party Custodian

Mr. Dodd's mother, Ruthie Dodd, was proposed as the third party custodian and, if released, Mr. Dodd would be placed into her custody to reside with her at her home in Belfast. However, at Mr. Dodd's initial appearance, it became clear that Ms. Dodd, who works full time, would not be able to stay with Mr. Dodd between the hours of eight a.m. and five p.m., and would be unavailable to drive Mr. Dodd to his pre-approved appointments during the day. At the hearing, Mr. Dodd presented several family members who could in some overlapping fashion serve as third party custodians to Mr. Dodd throughout the day. These family members included Mr. Dodd's brothers, Benjamin Rankin, age 21, and Mathew Rankin, age 23, and Christy Brown, Mr. Dodd's step-mother. Some of these family members live elsewhere and work during the day. The Court drew the conclusion that no one person or group of people would be able to supervise Mr. Dodd at all hours of the day. The Court then considered additional conditions to assure Mr. Dodd's appearance.

### 2. GPS Monitoring System

If Mr. Dodd were released, U.S. Probation Office recommended that he be required to submit to location monitoring, specifically, Active Global Positional Satellite (GPS) monitoring. The GPS device, which would be attached to Mr. Dodd's ankle, would allow the Probation Office to track Mr. Dodd's movements and would notify the Office within minutes if the device was tampered with or removed. Given the reliability of this technology, the Court is confident that the Probation Office will be able to keep track of Mr. Dodd's whereabouts.

### 3. Weekly Schedule

As a final condition, the Court considers the requirement that Mr. Dodd inform the Probation Office of his appointments on a weekly basis. With this condition in place, the Probation Office would be able to distinguish between Mr. Dodd's approved and unapproved movements. The Court reiterated that if Mr. Dodd were to leave his mother's house without the permission of the Probation Office, he would be in violation of a condition of his release.[4]

### D. Summary

The Government presents a legitimate concern; Mr. Dodd has fled before and he might again. However, the Court is satisfied that the conditions imposed, including that Mr. Dodd reside at his mother's home, wear a GPS monitoring device, and keep the Probation Office apprised of his weekly appointments, will reasonably assure Mr. Dodd's appearance when required.[5]

---

[4] Home detention is a condition of Mr. Dodd's release. As stated in the order setting the conditions of Mr. Dodd's release, he is restricted to his mother, Ruthie Dodd's, "residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the pretrial services office or supervising officer." *Order Setting Conditions of Release* at 2 (Docket # 22).

[5] A full description of the conditions of Mr. Dodd's release is set forth in the Order Setting Conditions of Release.

## II. CONCLUSION

The Court DENIES the Government's Motion for Detention (Docket # 8).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2010